IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHELLE DENISE HADLEY,

        Plaintiff,

v.                                                             Civil Action No. 5:14-cv-26

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

**A. Background**

On February 21, 2014, Michelle Denise Hadley ("Plaintiff") filed this action under 42 U.S.C. §§ 405(g) for judicial review of an adverse decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and social security income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 401-433.[1] The Commissioner filed her answer on April 29, 2014.[2] Plaintiff filed her Motion for Summary Judgment on June 30, 2014,[3] and the Commissioner filed her Motion for Summary Judgement on July 28, 2014.[4] The motions are now ripe for this Court's review, and for this report and recommendation.

**B. The Pleadings**

---

[1] ECF No. 1.

[2] ECF No. 6.

[3] ECF No. 12.

[4] ECF No. 14.

1. Plaintiff's Motion for Summary Judgement and Memorandum in Support.

2. Commissioner's Motion for Summary Judgement and Memorandum in Support

**C. Recommendation**

I recommend that:

1. Plaintiff's Motion for Summary Judgement be **DENIED** because substantial evidence supports the ALJ's consideration of Dr. Shaver's medical opinion and credibility analysis.  2. Commissioner's Motion for Summary Judgement be **GRANTED** for the reasons set forth

## II. FACTS

**A. Procedural History**

On October 4, 2010, Plaintiff applied for DIB and SSI benefits alleging a disability beginning on October 2, 2008. R. 161-69. Plaintiff's claims were initially denied on March 10, 2011 and upon reconsideration on June 21, 2011. R. 78, 83, 96, 100, 103. On August 18, 2011, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 110-11. An ALJ hearing was held on October 15, 2012, before ALJ William R. Paxton. R. 33. Plaintiff, represented by a non-attorney, testified at the hearing, as did a Vocational Expert ("VE"). R. 35. On October 30, 2012, the ALJ found that based on the application for a period of disability of disability insurance benefits filed on October 4, 2010, Plaintiff is not disabled under the Social Security Act. Plaintiff appealed this decision to the Appeals Council, which denied review on December 26, 2013. R. 1. Plaintiff then timely brought her claim to this Court.

**B. Medical History**

The following medical history is relevant to the issue of whether substantial evidence

supports the ALJ's finding that Plaintiff was not under a disability during the period at issue.

1. Plaintiff's Mental Health

During a exam performed by Gary Nichols, M.D., on February 26, 2008, he noted that Plaintiff was previously prescribed Prozac for depression and Mobic for myalgias by her gynecologist. R. 382. However, Plaintiff stopped taking both medications because she became drowsy and "has had crying episodes, low energy, increased appetite, weight gain, decreased ability to sleep, irritability, anhedonia, occasional trouble concentrating, and rates her mood 3-4/10." *Id.*

On June 4, 2009, a psychiatric review of Plaintiff was completed by Joseph A. Shaver, Ph.D. R. 392. Dr. Shaver determined that Plaintiff had depression, however, Plaintiff's impairment was not severe and did not limit (1) activities of daily living,; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; (4) or results in episodes of decompensation of an extended duration. R. 392-402. On review, Elliot Rotman, Ph.D., agreed with Dr. Shaver's determinations. R. 420.

On January 25, 2011, Thomas J. Schmitt, M.D., evaluated Plaintiff. R. 591. On a February 2, 2011 report, Dr. Schmitt determined that Plaintiff

> is alert and oriented. There is no evidence of impaired judgment, memory, or bizarre behavior. The patient appears to relate well to her examiner. There are no signs of constriction or restriction of interests and the patient appears to be able to manage her own funds. There is no evidence of agnosia, apraxia, or aphasia.

R. 593.

On March 9, 2011, Melodye Jill Hornish, M.A., completed a consultive evaluation report and conducted a clinical interview and mental status examination of Plaintiff. R. 606. During the

3

interview, Plaintiff reported her depressed mood, little ambition, and excessive sleep. R. 607. Plaintiff also reported problems with concentration and crying easily. *Id.* Ms. Hornish found Plaintiff's concentration to be "[s]everely deficient as evidence by her ability to perform less than 50% of the [assigned tasks] before she lost track of what she was supposed to do." R. 608. Ms. Hornish's found Plaintiff has adjustment disorder with depressed mood. R. 609.

On March 10, 2011, Dr. Shaver performed a second psychiatric review of Plaintiff. R. 612. Dr. Shaver determined Plaintiff had adjustment disorder with depressed mood. R. 615. Next, Dr. Shaver determined if Plaintiff had any functional limitations. R. 622. Dr. Shaver found Plaintiff had no decompensation episodes of an extended duration. *Id.* However, Dr. Shaver did find Plaintiff had mild restriction of activities of daily living and mild difficulties in maintaining social functioning. *Id.* Dr. Shaver also found Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. *Id.*

Dr. Shaver also completed a "Mental Residual Functional Capacity Assessment" ("RFC"). R. 626. On the RFC, Dr. Shaver noted that although Plaintiff had been previously rated as "severely impaired" by Ms. Hornish, Plaintiff's "persistence and all aspects of memory fell [within normal limits]." R. 628. Under the categories provided, Dr. Shaver marked that Plaintiff was only "moderately limited" in "[t]he ability to maintain attention and concentration for extended periods." R. 626. Further, Dr. Shaver opined that Plaintiff "retains the mental capacity to operate in work-like situations that do not require high levels of concentration." *Id.* On May 10, 2011, Bob Marinelli, Ed.D., reported that he "reviewed all pertinent evidence" in the Plaintiff's file and Dr. Shaver's March 10, 2011, review and affirmed Dr. Shaver's report as written. R. 631.

4

2. Plaintiff's Physical Health

On March 31, 2008, Plaintiff underwent an x-ray that revealed a "[p]ossible spasm with slight spondylosis and disc narrowing." R. 354. On October 2, 2008, Plaintiff underwent a right total mastectomy. R. 521. Plaintiff was treated for an infection after her bilateral mastectomy. R. 300. On November 24, 2008, Plaintiff was examined following Plaintiff's complaints of arm and chest pain. R. 532. In 2009, Plaintiff attended physical therapy sessions and was discharged in July 2009. R. 454.

An x-ray of Plaintiff on March 24, 2010, was "[u]nremarkable." R. 574. The attending radiologist found "[n]o significant degenerative change" of Plaintiff's left hip. *Id.* That same day, an x-ray of Plaintiff's lumbar spine revealed "[s]ome mild degenerative disc changes . . . ." R. 575. Another x-ray of Plaintiff's lumbar spine, performed on October 26, 2010, revealed similar results. R. 584.

On November 1, 2010, Plaintiff was examined by G.S. Brar, M.D. R. 585. Dr. Brar diagnosed Plaintiff with fibromyalgia, "secondary osteoarthritis [in] both knees and mechanical low back pain, related to obesity [and] chronic left Trochanteric Bursitis." *Id.* On November 18, 2010, Plaintiff received an injection in her trochanteric bursa. R. 587. On February 23, 2011, Gary Nichols, M.D., Plaintiff's primary care provider noted "her fibromyalgia and depression symptoms are doing well despite weaning [Cymbalta]." R. 864. On May 13, 2011, Shelly P. Kafka, M.D., found that Plaintiff "does meet [the] diagnostic criteria for fibromyalgia . . . [and] also likely has some osteoarthritis as well as bilateral greater trochanteric bursitis." R. 642.

During a examination on August 25, 2011, Dr. Nichols found Plaintiff has "tenderness over the right SI joint . . . [but] no CVA tenderness." R. 860. A September 2011 examination by

Dr. Nichols revealed Plaintiff's "lower back is only mildly tender." R. 859. On December 22, 2011, Plaintiff was evaluated prior to second stage breast reconstruction. R. 883. During the evaluation she noted she does her own housework, laundry, cooking, and grocery shopping. R. 885.

**C. Testimonial Evidence**

Plaintiff testified that she was born on December 15, 1967. R. 39. Plaintiff finished high school and attended beauty college for eighteen months. *Id.* Plaintiff attributes her breast cancer and various prescribed medications for her weight gain. *Id.* Plaintiff is divorced and lives with her two minor children. R. 40.

Plaintiff testified that she drives to work and for errands. *Id*. She testified that, at times, her hands and arms will go numb while driving. *Id.* Plaintiff testified that she is a beautician. *Id.* She testified that she earns roughly the same amount of money in 2012 as she earned in 2011. R. 41. Plaintiff works seventeen or eighteen hours a week. *Id.* Plaintiff testified that she sometimes misses scheduled appointments because of severe headaches or body aches. *Id.* Plaintiff testified that flu-like symptoms, achiness, and numbness limits her ability to work full-time. She alleges difficulty standing and walking, and has fallen in the past. R. 42. Plaintiff testified that she has trouble sitting. *Id.* Plaintiff testified that she will take two to three breaks to sit while working on a forty-five minute perm. *Id.* Between hair appointments, Plaintifff testified she will use a heating pack on her hip and lay down to rest. R. 47. Plaintiff testified that her left hip frequently bothers her and can only sit for twenty or thirty minute periods. R. 42-43. Plaintiff testified that she can only comfortably lift ten pounds. R. 44. At the time of the ALJ hearing, Plaintiff testified she was taking Ibuprofen for her pain. *Id*. At other times, Plaintiff testified to using Tylenol

6

Arthritis and Albuterol for shortness of breath. *Id.*

Plaintiff testified she is bothered by depression. R. 45. She testified that her depression limits her ability maintain her attention and concentration during work. *Id.* Plaintiff testified she takes her daughter to gymnastics at least once a month and tries to attend her son's basketball games. R. 46. Plaintiff testified that her difficulties focusing have led to mistakes at work. R. 48.

Plaintiff testified that she has "fibromyalgia flares." R. 50. Plaintiff described these flares as general "achiness" where she wants to stay in bed all day. *Id,* R. 51. During these flares, Plaintiff testified she will suffer from migraine headaches that last an entire day. *Id.* Plaintiff alleges issues with irritable bowel syndrome and pain medications have upset her stomach. R. 52. Plaintiff testified that she would not be able to show up to work every day if she had a full-time job.

The ALJ also heard testimony from Cecilia Thomas, a VE. The VE described claimant's past work as a hairdresser as light at the SVP 6 level. Next, the ALJ asked the VE to consider the following hypothetical:

> assume a person who is a younger person, as defined in the regulations, currently age 44, who has a high school education and past relevant work as [previously described by the VE]. However, if you'll assume that that person were limited to performing sedentary work, could never perform climbing of ladders, ropes or scaffolds, kneeling, crouching or crawling but can occasionally perform balancing, stooping, climbing of ramps and stairs; must avoid concentrated exposure to extreme heat, extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation, and hazards such as heights and machinery; who would need a sit/stand option, who could stand for 20 minutes at a time and sit for 30 minutes at a time; is limited to understanding, remembering, and carrying out simple instructions. Based on those limitations, would there be any unskilled sedentary jobs that such a person could perform?

7

R. 55. The VE testified that such an individual could perform other unskilled sedentary jobs in the national and local economy. *Id.* The VE testified that such an individual could work as a surveillance system monitor (DOT 379.367-010); document preparator (DOT 249.587-018); or call-out operator (DOT 237.367-014). *Id.,* R. 56. According to the VE, all of these positions are sedentary unskilled positions and SVP 2. *Id.*

Next, the ALJ asked an additional hypothetical:

> If I were to add to the limitations from the prior question that such a person would have to lie down during a portion of the day outside of normal breaks and lunch for as much as even a half and hour a day, could such a person perform the jobs that you've named?

*Id.* From the hypothetical, the VE testified that no jobs would accommodate that type of limitation. *Id.* Afterwards, the ALJ proposed a third hypothetical to the VE:

> So if you leave off that limitation and ask you to assume the limitations from the first [hypothetical] and further ask you to assume that such person on average would miss work one day a week due to symptoms, could such person perform the jobs that you've named?

*Id.*, R. 57. Again, the VE testified that such a person could not sustain a job with that level of absenteeism.

Finally, the ALJ proposed a fourth and final hypothetical to the VE:

> So if you leave off that limitation but ask the limitations from the first question that I gave you and ask you to assume that such person because of symptoms would be off task, saying even routine and repetitive tasks for as much as two hours during an eight-hour work day, could such person perform the job that you've named?

*Id.* Under this hypothetical, the VE testified that although "there aren't any hard and fast rules as to when a job would become in jeopardy but I think if that problem persisted, that person would

rapidly be in danger of losing a job." *Id.*

### III. ALJ FINDINGS

In determining whether Plaintiff was disabled, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2008, the alleged onset date of Plaintiff's disability. R. 14. At step two, the ALJ found that Plaintiff has the following severe impairments: status post bilateral mastectomies, right upper extremity lymphedema, obesity, fibromyalgia, left trochanteric bursitis, chronic low back pain syndrome, lumbar disc disease, multiple arthralgias, asthma, sleep apnea, headaches, and adjustment disorder with depressed mood. At the third step, the ALJ found that none of Plaintiff's impairments or combination of impairments meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Supart P, Appendix 1. R. 15. Before considering step four of the sequential evaluation process, the ALJ determined that Plaintiff has the residual functional capacity to:

> perform sedentary work . . . except she can never perform climbing of ladders, ropes or scaffolds, kneeling, crouching or crawling. She can occasionally perform balancing, stooping and climbing of ramps and stairs. She must avoid concentrated exposure to extreme heat, extreme cold, vibrations, fumes, odors, dusts, gases, poor ventilation and hazards such as height and machinery. She would need a sit/stand option where she could stand for twenty minutes at a time and sit for thirty minutes at a time, She is limited to understanding, remembering and carrying out simple instructions.

R. 18. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. R. 24. At the final step, the ALJ found that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. *Id.*

# IV. MOTIONS FOR SUMMARY JUDGMENT

## A. Contentions of the Parties

Plaintiff contends that the ALJ's unfavorable decision is based on legal error and not supported by substantial evidence. Specifically, she argues that (1) the ALJ failed to comply with SSR 96-8p in assessing Plaintiff's RFC by ignoring, without explanation, the opinion of Dr. Shaver, who opined that Plaintiff was more limited in concentration, persistence, and pace than found by the ALJ, and (2) the ALJ failed to properly evaluate Plaintiff's credibility by basing his judgement purely on objective medical evidence and by failing to consider Plaintiff's persistent efforts to obtain pain relief.

The Commissioner argues that substantial evidence supports the ALJ's determination that Plaintiff could perform a significant number of simple sedentary jobs in the economy. Specifically, she argues that (1) substantial evidence supports the ALJ's assessment of Plaintiff's moderate limitations in concentration, persistence, or pace, and (2) substantial evidence supports the ALJ's assessment of Plaintiff's credible limitations.

## B. The Standards

### 1. Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

2. Judicial Review

This Court's review of the ALJ's decision is limited to determining whether the decision is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence" is not a "large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 664-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The decision before the Court is "not whether the Claimant is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 2001)). The ALJ's decision must be upheld if it is supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3).

3. Social Security - Claimant's Credibility

"Because he had the opportunity to observe the demeanor and to determine the credibility of the Claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). "We will reverse an ALJ's credibility determination only if

11

the Claimant can show it was 'patently wrong'" *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (quoting *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990)).

**C. Discussion**

1. Did the ALJ comply with SSR 96-8p?

Plaintiff argues that the ALJ did not comply with SSR 96-8p at the fourth step of the sequential evaluation process because the ALJ did not limit Plaintiff's concentration, persistence, or pace in his RFC. Plaintiff's contends the ALJ failed to explain what medical opinions he gave weight and explain why he did not adopt the portion of Dr. Shaver's medical opinion that addressed concentration, persistence, and pace.

A "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 (July 2, 1996). In contrast, a Psychiatric Review Technique Form ("PRTF") is "used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id*. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in . . . the Listing of Impairments, and summarized on the PRTF." *Id.*

An ALJ's RFC must be "based upon a consideration of all relevant evidence of record on the claimant's impairment." *See English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). The Fourth Circuit has held that, in consideration of the underlying medical record, an ALJ does not have "to transfer the findings on the PRTF verbatim . . . ." *Yoho v. Comm'r of Soc. Sec*., No. 98–1684, 1998 WL 911719, at *3 (4th Cir.1998) ; *see also Jones v. Astrue*, No. CIV.A. CBD-09-2314, 2010 WL 4923294, at *11 (D. Md. Nov. 29, 2010) (finding that the ALJ's failure to use precise terminology was "not fatal.").

Here, although the ALJ's RFC did not use the same terminology indicated on Dr. Shaver's RFC, he did address Plaintiff's limitations in concentration, persistence, and pace. Moreover, in step 4, the ALJ considers the RFC because the PRTF is only considered in the previous steps. *See* SSR 96-8p. Further, in reviewing the record, the undersigned finds that the ALJ did explain what opinions he gave weight. As required under SSR 96-8p during step 4 sequential evaluation process, the ALJ addressed Dr. Shaver's RFC and his conclusion that "the claimant retained the capacity to operate in work-like situations that do not require high levels of concentration." R. 24. Further, the ALJ explained that he gave Dr. Shaver's RFC "some weight" because "it is consistent with the Hornish evaluation." *Id.* There is substantial evidence to show that Dr. Shaver's and Ms. Hornish's opinions are consistent. Ms. Hornish and Dr. Shaver both agree Plaintiff had difficulties concentrating. R. 608, 622. Although Ms. Hornish and Dr. Shaver use different phrasing in reference to Plaintiff's concentration limitations, there is substantial evidence to show a concurrence between the two medical professionals. Lastly, in the ALJ's RFC, he found that Plaintiff "is limited to understanding, remembering and carrying out simple instructions." R. 18. Although the ALJ's findings are not "verbatim" of the medical record, the Fourth Circuit has held this finding is nonetheless sufficient, *see Yoho*, 1998 WL 911719, at *3, and "based upon a consideration of all relevant evidence of record on the claimant's impairment" the ALJ used substantial evidence to come to his final determination. *English*, 10 F.3d at 1085.

2. Did the ALJ properly evaluate Plaintiff's credibility?

Under this argument, Plaintiff contends that the ALJ's decision is not based on substantial evidence because he failed to evaluate the severity of Plaintiff's fibromyalgia in accordance with SSR 12-2p. Further, Plaintiff contends the ALJ improperly based his credibility

finding solely on objective medical evidence, rather than considering Plaintiff's subjective complaints in addition to the objective medical evidence.

A two-part test is used for evaluating the limiting effects of subjective symptoms. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. 404.1529. First, objective medical evidence must show the existence of a medical determinable impairment "'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig,* 76 F.3d at 594 (quoting 20 C.F.R. 404.1529(b)). In other words, "no symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms." SSR 96-7p. Second, after the claimant has met this threshold obligation of showing an impairment reasonably likely to cause the pain claimed, the adjudicator must evaluate the intensity, persistence, and limiting effects of the claimant's pain and other symptoms in order to determine the extent to which they affect her ability to work. *Craig*, 76 F. 3d at 595; 20 C.F.R. 404.1529(c)(1); SSR 96-7p. In making this evaluation, the ALJ must consider all of the available evidence, including "the claimant's medical history, medical signs, and laboratory findings . . . any objective medical evidence of pain . . . and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Craig*, at 595 (internal citations omitted).

While objective medical evidence of pain "is a useful indicator . . . in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those

symptoms, such as pain, may have on [a claimant's] ability to work," 20 C.F.R. 404.1529(c)(2), in many cases, symptoms, such as pain, "suggest a greater severity of impairment than can be shown by objective medical evidence alone." SSR 96-7p; *see also Craig*, 76 F. 3d at 595 ("[B]ecause pain is subjective and cannot always be confirmed by objective indicia, claims of disabling pain may not be rejected *solely* because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.") (emphasis in original). SSR 96-7p requires that

> If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects.

*Id*.

The regulations set forth certain factors for the adjudicator to consider to determine the extent to which the symptoms limit the claimant's capacity to work:

> 1) The individual's daily activities; 2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) Factors that precipitate and aggravate the symptoms; 4) Type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. 404.1529(c). Accompanying factors that the adjudicator must also consider when assessing the credibility of an individual's statements are provided in SSR 96-7p. These factors

15

include medical signs and laboratory findings; diagnosis, prognosis, and other medical opinions provided by medical sources; and statements and reports about claimant's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the claimant's symptoms and how the symptoms affect the individual's ability to work. SSR 96-7p.

Specifically in regards to fibromyalgia, "a finding of disability" will be "established by appropriate medical evidence." SSR 12-2p, 2012 WL 3104869 (July 25, 2012). "As in all claims for disability benefits, [ALJ's] need objective medical evidence to establish the presence of an [medically determinable impairment]." *Id.* In addition, an ALJ's RFC assessment is based "on all relevant evidence in the case record." *Id.*

Contrary to Plaintiff's contention, the record illustrates that the ALJ evaluated Plaintiff's symptoms in accordance with the two-part test in *Craig* and the factors outlined in 20 C.F.R. 404.1529 and SSR 96-7p. In step one of the *Craig* test, the ALJ found that Plaintff has "medically determinable impairments that could reasonably be expected to cause some of the alleged symptoms . . . ." R. 19. The ALJ addresses, at length, Plaintiff's medical history, including her symptoms of fibromyalgia. R. 19-24.

Next, in accordance with the factors set out in 20 C.F.R. 404.1529 and SSR 96-7p, the ALJ considered whether Plaintiff's subjective statements regarding her symptoms were substantiated by, or conflicted with, the objective evidence in the record, and found Plaintiff "not fully credible." R. 20. Plaintiff argues that the ALJ based her credibility solely on objective medical evidence. In this regard, Plaintiff is incorrect. The ALJ did, in fact, consider objective

and subjective evidence. The ALJ meticulously detailed Plaintiff's testimony[5] and factored that testimony with the objective medical evidence.

Even after noting these inconsistencies between the subjective and objective record and addressing Plaintiff's testimony that she works 17 to 18 hours a week, drives to and from work, shops for groceries, and even drove to the hearing herself, the ALJ still limited his RFC to reflect that Plaintiff only had the "capacity to perform sedentary work . . . ." R. 18-19. Contrary to Plaintiff's argument, the ALJ did not "outline the objective medical evidence" simply to "reject her subjective complaints." In consideration of the entire record, the ALJ determined that Plaintiff's contentions of "extreme limitations" were not "fully credible." R. 20. The undersigned finds that substantial evidence supports the ALJ's conclusion.

In summary, because Plaintiff did not show that the ALJ's credibility determination was "patently wrong" and the ALJ's determination was "sufficiently specific," the ALJ's decision here is supported by substantial evidence. *Powers,* 207 F.3d at 435; SSR 96-7P. Therefore, this Court finds that the ALJ correctly followed the *Craig* test in evaluating Plaintiff's subjective symptoms. Additionally, the Court finds that more than substantial evidence exists to support the ALJ's decision to discredit Plaintiff's subjective complaints.

## V. RECOMMENDATION

In reviewing the record, the Court concludes that the ALJ's decision was based on substantial evidence, and **RECOMMENDS THAT**:

---

[5] The ALJ addresses at least three significant inconsistencies between Plaintiff's testimony and the record. Once inconsistency includes the use of a compression sleeve during the hearing. R. 20. The ALJ noted that none of her providers mentioned the use of a compression sleeve or glove during their examination. *Id.* During the hearing, Plaintiff testified that she had difficulty sleeping, yet medical history displayed significantly improved sleep and success with therapy. R. 21. Lastly, Plaintiff testified that she only worked a few hours a day, however, based on her tax records, Plaintiff's earnings almost doubled from 2010 to 2011. R. 22.

17

1. Plaintiff's Motion for Summary Judgment be **DENIED**. ECF No. 12.

2. Commissioner's Motion for Summary Judgment be **GRANTED** (ECF No. 14) for the reasons set forth.

Any party who appears *pro se* and any counsel of record, as applicable, may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985): *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

DATED: November 7, 2014        /s/ *James E. Seibert*
                               JAMES E. SEIBERT
                               UNITED STATES MAGISTRATE JUDGE